1  Marc J. Randazza, CA Bar No. 269535
   Alex J. Shepard, CA Bar No. 295058
2  RANDAZZA LEGAL GROUP, PLLC
   4035 South El Capitan Way
3  Las Vegas, Nevada 89147
   Telephone: 702-420-2001
4  Facsimile: 305-437-7662
   ecf@randazza.com
5
6
   *Attorneys for Plaintiff,*
7  *Consumer Opinion LLC*

8              **IN THE UNITED STATES DISTRICT COURT**
9               **NORTHERN DISTRICT OF CALIFORNIA**
                      **SAN JOSE DIVISION**
10

11  CONSUMER OPINION LLC,                    Case No. 3:16-cv-05100-JCS
    a Nevada limited liability company,
12                                           **FIRST AMENDED COMPLAINT FOR:**
              Plaintiff,
13                                           **(1) VIOLATION OF 17 U.S.C. § 512(f);**
                                             **(2) UNLAWFUL, UNFAIR, AND**
14       vs.                                     **FRAUDULENT BUSINESS PRACTICE**
                                                 **UNDER CALIFORNIA BUSINESS AND**
15  FRANKFORT NEWS CORP,                         **PROFESSIONS CODE § 17200;**
      an entity of unknown origin;          **(3) CIVIL CONSPIRACY; and**
16  FRANKFORT HERALD NEWS CORP,             **(4) ABUSE OF PROCESS**
      an entity of unknown origin;
17  HEARST MEDIA LLC,
      an entity of unknown origin;
18  HEART BROADCASTING NETWORKS,            **DEMAND FOR JURY TRIAL**
      an entity of unknown origin;
19  HEARST BROADCASTING NETWORKS,
      an entity of unknown origin;
20  PALASTINETODAY MEDIACAST LLC,
      an entity of unknown origin;
21  ALAUDDIN AHMED, an individual;
22
           *(continued on following page)*
23
24
25
26

RANDAZZA | LEGAL GROUP

1  MUHAMMAD ASHRAF; an individual;
   JUUSO HAGGMAN, an individual;
2  SHEENA WILLIAM, an individual;
   JOSHUA FITZGNER, an individual;
3  JOHN MATHEW, an individual;
   PHILLIP CANNELLA, an individual;
4  BRAD KUSKIN, an individual;
   MARVELLANE FARMS LTD.,
5    a Canadian entity;
   WAGNER TRUCKING LLC,
6    a Mississippi entity;
7  PROFIT MARKETING INC., a Canadian
   corporation;
8  JOHN DOES 1-10; and
   ROE CORPORATIONS 11-20,
9
10           Defendants.

11

12       Plaintiff CONSUMER OPINION LLC ("Opinion") hereby files this complaint

13  against Defendants FRANKFORT NEWS CORP. ("Frankfort"), FRANKFORT HERALD

14  NEWS CORP ("Frankfort Herald"), HEARST MEDIA LLC ("Hearst"), HEART

15  BROADCASTING NETWORKS ("Heart"), HEARST BROADCASTING NETWORKS

16  ("Hearst"), PALASTINETODAY MEDIACAST LLC, ALAUDDIN AHMED, MUHAMMAD

17  ASHRAF, JOSHUA FITZGNER, JUUSO HAGGMAN, SHEENA WILLIAM, JOHN

18  MATHEW, PHILLIP CANNELLA, BRAD KUSKIN, MARVELLANE FARMS LTD., WAGNER

19  TRUCKING LLC., PROFIT MARKETING INC., John Does 1-10, and Roe

20  Corporations 11-20, for violation of 17 U.S.C. § 512(f); unlawful, unfair, and

21  fraudulent business practices under California Business and Professions Code

22  § 17200; civil consipiracy; and abuse of process.

23

24  . . .

25

26  . . .

## 1.0   <u>INTRODUCTION</u>

1.     Defendants are participants in a fraudulent "reputation management" scheme by which they remove content critical of individuals or businesses by systematically abusing the Digital Millennium Copyright Act's ("DMCA") notice and takedown procedure.

2.     The details of the scheme are ignoble but ingenious.  It starts with an entity or professional who has received negative reviews in online forums, such as the web site <pissedconsumer.com>.[1]   These reviews are devoid of actionable content and contain the opinions of aggrieved customers.

3.     The subject of the negative review then approaches a "reputation management" company with the desire either to remove the offending content altogether, or to have it de-listed from search engines such as Google.

4.     The reputation management company, knowing that preliminary injunctions are almost never permitted in defamation and related cases, abuses the DMCA for the purpose of removing or de-listing this content.

5.     As an integral part of this scheme, the "reputation management" company creates a web site that purports to be a "news" site, which is designed to look legitimate at a glance, but any degree of scrutiny reveals it as the charade it is.

6.     The company then copies the text of the offending review on the consumer review web site and places a copy of it on the fake "news" web site, attributing it to a separate author and attempting to pass it off as a "news" article.  This article is given a false publication date on the "news" web site that

---

[1]   Owned and operated by Plaintiff Consumer Opinion LLC.

pre-dates the original publication of this content on the consumer review web site.

7.    In the final phase of the scheme, the reputation management company sends a DMCA notice to Google, claiming that the reviewer committed copyright infringement by copying the fake "article."  Because Defendants have ensured that everything looks legitimate on the surface, Google frequently accepts the notice and de-lists the content.  With the "article's" job done, the reputation management company then removes the copied material from its fake "news" site, removing any trace of the offending content.

8.    In other words, a "reputation management company" (1) creates a fake "news" web site, (2) steals a consumer review, (3) places the review on the fake "news" site with a fake time stamp and claims ownership of it, and (4) claims copyright in the review and sends a fake DMCA request.

9.    Defendants have gotten away with this scheme for a number of months.   But Consumer Opinion LLC caught Defendants and respectfully requests that this Court enjoin Defendants from further conduct of this kind, and that they pay damages plus attorneys' fees and costs incurred in bringing this action.

## 2.0   JURISDICTION AND VENUE

10.    This case arises under the 17 U.S.C. § 512(f) of the U.S. Copyright Act and California state law.  This Court thus has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1338(a), and 17 U.S.C. § 101 *et seq.*   Supplemental jurisdiction is proper for the remaining claims pursuant to 28 U.S.C. § 1367.

11.    This Court has personal jurisdiction under the California Long-Arm Statute, Cal. Code Civ. Proc. § 410.10.

12.     Personal jurisdiction is proper over Defendants because the wrongful activity at issue, namely the transmission of fraudulent DMCA notices, was directed at and completed in this state, as Google, Inc., a California corporation, was the recipient of these DMCA notices and acted upon them in this State.  Defendants knew or should have known that Google Inc., the central (yet unwitting) actor in this scheme, is located in this State.  Defendants further knew that by transmitting these DMCA notices to this district, they would be causing censorship in this district, and that the actions they caused to be taken would occur in this district.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) & (c)(2).  Venue lies in the unofficial Southern Division of this Court.

### 3.0.   <u>INTRADISTRICT ASSIGNMENT</u>

14.     This action arose in Santa Clara County in that Defendants submitted the fraudulent DMCA notices to Google Inc., located in Santa Clara County.  Accordingly, pursuant to Local Rules of Court 3-2(c) and (d), the Clerk shall assign the action to the San Jose division.

### 4.0.   <u>THE PARTIES</u>

15.     Plaintiff Consumer Opinion LLC is a Nevada limited liability company, and is the owner and operator of the consumer review web site <pissedconsumer.com>.

16.     There are three groups of Defendants: the first group consists of the entities that transmitted fraudulent DMCA notices (the "Notice Defendants"):

a.     Defendant Frankfort News Corp. is an entity of unknown origin.

b.     Defendant Frankfort Herald News Corp. is an entity of unknown origin.

c.     Defendant Hearst Media LLC is an entity of unknown origin.

d.      Defendant Heart Broadcasting Networks is an entity of unknown origin.

e.      Defendant Hearst Broadcasting Networks is an entity of unknown origin.

f.      Defendant Palastinetoday Mediacast LLC is an entity of unknown origin.

g.      On information and belief, Defendant Juuso Haggman is an individual residing in Finland.

17.    The second group of defendants consists of the owners and operators of the fake "news" sites that provided the facial justification for the fraudulent DMCA notices (the "Operating Defendants"):

a.      On information and belief, Alauddin Ahmed is an individual residing in Illinois and is the registrant of the domain names <palastinetimes.com> and <palastinetoday.com>.

b.      On information and belief, Muhammad Ashraf is an individual residing in Pakistan and is the registrant of the domain name <mashablecity.com>.

c.      On information and belief, Joshua Fitzgner is an individual of unknown residence, and is the author of one of the fake "news" articles that served as the basis for a fraudulent DMCA notice.

d.      On information and belief, Juuso Haggman is an individual residing in Finland, and is the author of one of the fake "news" articles that served as the basis for a fraudulent DMCA notice.

e.      On information and belief, Sheena William is an individual of unknown residence, and is the author of one of the fake "news" articles that served as the basis for a fraudulent DMCA notice.

f.      On information and belief, John Mathew is an individual of unknown residence, and is the author of one of the fake "news" articles that served as the basis for a fraudulent DMCA notice.

18.     The third group of Defendants consists of the individuals and entities who approached the other Defendants and either instructed them to abuse the DMCA or were informed of the scheme's details and approved of it, and who benefited from this scheme (the "Benefitting Defendants"):

a.      On information and belief, Phillip Cannella is an individual residing in Philadelphia, Pennsylvania and works as a financial advisor.

b.      On information and belief, Brad Kuskin is an individual residing in the State of Florida and works as a consultant for criminal defense attorneys in West Palm Beach, Florida.

c.      On information and belief, Marvellane Farms Ltd. is an entity located in Ottawa, Canada, which conducts farming operations.

d.      On information and belief, Wagner Trucking LLC is a Mississippi limited liability company that provides trucking and hauling services.

19.     The fourth category of Defendants are the "reputation management" companies that serve as the ringleaders of this scheme, which contracted with the Benefitted Defendants and coordinated the Notice Defendants and Operating Defendants to carry out this scheme (the "Reputation Management Defendants").

a.      Defendant Profit Marketing Inc. is a Canadian entity with an address at 3425 Harvester Road, Suite 200, Burlington, Ontario, Canada L7N 3M7.

b.    The identities of other "reputation management" companies involved in this scheme are currently unknown, and will be uncovered through discovery.

20.    The identities of John Doe Defendants are currently unknown, but will be uncovered during discovery.  These Defendants are individuals who designed, facilitated, and/or carried out Defendant's fraudulent DMCA scheme.

21.    The identities of Roe Corporation Defendants are currently unknown, but will be uncovered during discovery.  These defendants are entities that designed, facilitated, and/or carried out Defendant's fraudulent DMCA scheme.

### 5.0    FACTS COMMON TO ALL CLAIMS

22.    Starting no later than December 2015, Defendants began to carry out a scheme by which they abused the DMCA's notice and takedown procedure by falsely claiming content as their own for the purpose of targeting said content with fraudulent DMCA notices.

23.    The scheme starts with a "reputation management" company offering either to remove or de-index unflattering content about an individual or business.  Defendant Profit Marketing Inc. is just such a company.

24.    Profit Marketing Inc. owns and operates at least four web sites that offer "reputation management" services; <guaranteedremovals.com>, <thereputationfirm.com>, <gainpr.com>, and <reputationsavers.com>.

25.    The web site at <guaranteedremovals.com> boasts about its ability to remove or de-index content from web sites and online search engines, and even has a page directed specifically at <pissedconsumer.com>, discussing how it can remove consumer reviews "from Google's index [such that] it will not show up on any page of search results.  This ultimately makes it appear to

searchers as if it never existed."  (*See* "Remove Pissed Consumer" page on <guaranteedremovals.com>, attached as **Exhibit 1**.[2])

26.    This web site lists the same address as Defendant Profit Marketing Inc.'s web site, the two web sites have similar layouts, and the <guaranteedremovals.com> web site has a footer with a copyright notice that reads "©2015 Profit Marketing Inc."  (*Compare* "Contact Us" page for <guaranteedremovals.com>, attached as **Exhibit 2**,[3] and home page of <profitmarketing.com>, attached as **Exhibit 3**.[4])

27.    The web site at <thereputationfirm.com> similarly touts to consumers its ability to remove negative content from the Internet, even having pages targeted at specific consumer review sites.  (*See* <thereputationfirm.com> "Remove Negative Reviews" page, attached as **Exhibit 4**.[5])

28.    This web site has a very similar layout to <guaranteedremovals.com> and lists the same phone number.  (Compare **Exhibit 4** with **Exhibit 2**.)  It also lists its address as being in Mississauga, Ontario, Canada.  (*See* <thereputationfirm.com> "About Us" page, attached as **Exhibit 5**.[6])

29.    Showing that <thereputationfirm.com> is something of a nexus for Defendant Profit Marketing's activities, the site provides three different phone numbers, at least two of which are provided on other sites in Profit Marketing's

---

[2]    Available      at:      <http://guaranteedremovals.com/de-index-complaints/remove-pissed-consumer/> (last accessed Oct. 20, 2016).

[3]    Available at: <http://guaranteedremovals.com/contact-us/> (last accessed Oct. 20, 2016).

[4] Available at: <http://profitmarketing.com> (last accessed Oct. 20, 2016).

[5]    Available   at:   <http://thereputationfirm.com/remove-negative-review.html> (last accessed Oct. 20, 2016).

[6]    Available    at:    <http://www.thereputationfirm.com/about-us.html>    (last accessed Oct. 20, 2016).

network of sites.   (*See* **Exhibit 4**; **Exhibit 5**; <thereputationfirm.com> "Free Reputation Analysis" page, attached as **Exhibit 6**.[7])

30.   The web site at <gainpr.com>, while not discussing removal of online content, advertises similar services regarding "reputation management." (*See* <gainpr.com> home page, attached as **Exhibit 7**.[8])

31.   The <gainpr.com> web site lists the same phone number as the <guaranteedremovals.com> and <profitmarketing.com> web sites, has a nearly identical layout to the <guaranteedremovals.com> site, provides a copyright notice that reads "©2015 Profit Marketing Inc," and lists the same mailing address as the <thereputationfirm.com> site.  (Compare **Exhibits 2, 3, and 5** with <gainpr.com> "Contact Us" page, attached as **Exhibit 8**.[9])

32.   The web site at <reputationsavers.com> offers services similar to those on <guaranteedremovals.com>, namely removal of negative online reviews.  (*See* <reputationsavers.com> home page, attached as **Exhibit 9**.[10])

33.   The <reputationsavers.com> web site does not provide an address, but has one of the three phone numbers listed on <thereputationfirm.com>. (Compare **Exhibit 6** and **Exhibit 9**.)

34.   Each of these domains except <gainpr.com> employs a privacy service to obscure the identity of its registrant.  <gainpr.com>'s registrant is listed as "James John," located in Mississauga, Ontario, Canada, which is obviously an alias.  (*See* <gainpr.com> WhoIs summary, attached as **Exhibit 10**.)

---

[7]   Available   at:   <http://www.thereputationfirm.com/free-reputation-analysis.php> (last accessed Oct. 20, 2016).
[8]   Available at: <http://gainpr.com> (last accessed Oct. 20, 2016).
[9]   Available at: <http://gainpr.com/contact-us/> (last accessed Oct. 20, 2016.)
[10]   Available at: <http://reputationsavers.com> (last accessed Oct. 20, 2016).

35.     On information and belief, each of these five web sites is owned and operated by the same person or entity, which person or entity is responsible for at least one of the fraudulent DMCA notices discussed below.

### THE MARVELLANE FARMS DMCA NOTICE

36.     On December 15, 2015, Defendant Hearst Broadcasting Networks sent a DMCA notice to Google Inc. concerning content on Plaintiff's web site <pissedconsumer.com>.  The allegedly infringing content identified in the notice consisted of statements critical of Defendant Marvellane Farms Ltd. (*See* Marvellane Farms DMCA Notice, attached as **Exhibit 11**.)

37.     The DMCA notice claimed copyright in an "article" published on the web site <palastinetimes.com>, with an alleged publication date of July 15, 2014.  (*See* Marvellane Farms article, attached as **Exhibit 12**.)

38.     The DMCA notice claimed that this "article" was infringed by a consumer review on the <pissedconsumer.com> web site with a publication date of July 26, 2014.  (*See* Marvellane Farms review, attached as **Exhibit 13**.)

39.     The Marvellane Farms DMCA notice was fraudulent.  The "article" was not published on the <palastinetimes.com> web site on July 15, 2014; in fact, on information and belief, the <palastinetimes.com> web site did not display any content that could be described as "news articles" until a few months ago.

40.     Instead, shortly before sending the DMCA notice, Defendant Hearst Broadcasting Networks copied the content of the <pissedconsumer.com> review, uploaded it to the <palastinetimes.com> web site, and provided it with a false publication date to make it appear that it was published prior to the <pissedconsumer.com> review.

41.     Defendant Sheena William is the purported author of this "article," and either carried out these fraudulent activities or was a willing participant in them.

42.     Defendant Hearst Broadcasting Networks knew that the <pissedconsumer.com> review identified in its DMCA notice was not infringing any work owned by it, and in fact that it had committed copyright infringement by copying the entirety of the review.

43.     Defendant Hearst Broadcasting Networks transmitted the DMCA notice to Google Inc. in bad faith, knowing that no copyright infringement had occurred, for the purpose of tricking Google Inc. into de-listing the <pissedconsumer.com> review from Google search engine results.

44.     Defendant Marvellane Farms Ltd. either instructed Defendant Hearst Broadcasting Networks to send this fraudulent DMCA notice, or was informed that it would be sent and approved of it.

45.     On information and belief, Defendant Alauddin Ahmed was the registrant of the <palastinetimes.com> domain name at the time this fraudulent DMCA notice was sent, and either instructed Defendant Hearst Broadcasting Networks to send it or assisted Hearst in sending it.

### The Phillip Cannella DMCA Notice

46.     On January 28, 2016, Defendant Palastinetoday Mediacast LLC sent a DMCA notice to Google Inc. concerning content on Plaintiff's web site <pissedconsumer.com>.  The allegedly infringing content identified in the notice consisted of statements critical of Defendant Phillip Cannella.  (*See* Phillip Cannella DMCA Notice, attached as **Exhibit 14**.)

47.     The DMCA notice claimed copyright in an "article" published on the web site <palastinetoday.com>, with an alleged publication date of June 22, 2013.  (*See* Phillip Cannella article, attached as **Exhibit 15**.)

48.     The DMCA notice claimed that this "article" was infringed by a consumer review on the <pissedconsumer.com> web site with a publication date of June 27, 2013.  (*See* Phillip Cannella review, attached as **Exhibit 16**.)

49.     The Phillip Cannella DMCA notice was fraudulent.  The "article" was not published on the <palastinetoday.com> web site on June 22, 2013.

50.     Instead, shortly before sending the DMCA notice, Defendant Palastinetoday Mediacast LLC copied the content of the <pissedconsumer.com> review, uploaded it to the <palastinetoday.com> web site, and provided it with a false publication date to make it appear that it was published prior to the <pissedconsumer.com> review.

51.     Defendant Joshua Fitzgner is the purported author of this "article," and either carried out these fraudulent activities or was a willing participant in them.

52.     Defendant Palastinetoday Mediacast LLC knew that the <pissedconsumer.com> review identified in its DMCA notice was not infringing any work owned by it, and in fact that it had committed copyright infringement by copying the entirety of the review.

53.     Defendant Palastinetoday Mediacast LLC transmitted the DMCA notice to Google Inc. in bad faith, knowing that no copyright infringement had occurred, for the purpose of tricking Google Inc. into de-listing the <pissedconsumer.com> review from Google search engine results.

54.     Defendant Phillip Cannella either instructed Defendant Palastinetoday Mediacast LLC to send this fraudulent DMCA notice, or was informed that it would be sent and approved of it.

55.     On information and belief, Defendant Alauddin Ahmed was the registrant of the <palastinetoday.com> domain name at the time this fraudulent

RANDAZZA | LEGAL GROUP

1    DMCA notice was sent, and either instructed Defendant Palastinetoday

2    Mediacast LLC to send it or assisted Palastinetoday in sending it.

3                         THE BRAD KUSKIN DMCA NOTICE

4         56.    On April 15, 2016, Defendant Frankfort News Corp sent a DMCA

5    notice to Google Inc. concerning content on Plaintiff's web site

6    <pissedconsumer.com>.  The allegedly infringing content identified in the notice

7    consisted of statements critical of Defendant Brad Kuskin.  (*See* Brad Kuskin

8    DMCA Notice, attached as **Exhibit 17**.)

9         57.    The DMCA notice claimed copyright in an "article" published on

10   the web site <frankfortherald.com>, with an alleged publication date of

11   January 5, 2012.  (*See* Brad Kuskin article, attached as **Exhibit 18**.)

12        58.    The DMCA notice claimed that this "article" was infringed by a

13   consumer review on the <pissedconsumer.com> web site with a publication

14   date of January 7, 2012.  (*See* Brad Kuskin review, attached as **Exhibit 19**.)

15        59.    The Brad Kuskin DMCA notice was fraudulent.  The "article" was not

16   published on the <frankfortherald.com> web site on June 22, 2013.  In fact,

17   according to Archive.org's Wayback Machine, as late as August 17, 2015, the

18   <frankfortherald.com> domain name resolved to a generic parking page.

19   (*See* <frankfortherald.com> Wayback Machine record, attached as **Exhibit 20**.)

20        60.    Instead, shortly before sending the DMCA notice, Defendant

21   Frankfort News Corp copied the content of the <pissedconsumer.com> review,

22   uploaded it to the <frankfortherald.com> web site, and provided it with a false

23   publication date to make it appear that it was published prior to the

24   <pissedconsumer.com> review.

25        61.    Defendant John Mathew is the purported author of this "article,"

26   and either carried out these fraudulent activities or was a willing participant in

     them.

RANDAZZA | LEGAL GROUP

62.   Defendant Frankfort News Corp knew that the <pissedconsumer.com> review identified in its DMCA notice was not infringing any work owned by it, and in fact that it had committed copyright infringement by copying the entirety of the review.

63.   Defendant Frankfort News Corp transmitted the DMCA notice to Google Inc. in bad faith, knowing that no copyright infringement had occurred, for the purpose of tricking Google Inc. into de-listing the <pissedconsumer.com> review from Google search engine results.

64.   On information and belief, Defendant Brad Kuskin contracted with Defendant Profit Marketing Inc. (specifically through its web site <guaranteedremovals.com>) to remove or de-index the <pissedconsumer.com> review about him.

65.   On information and belief, Defendant Profit Marketing Inc. either instructed Defendant Frankfort News Corp to carry out the activities described above, or carried out these activities itself using "Frankfort News Corp" as an alias to avoid detection.

66.   On information and belief, Defendant Brad Kuskin either instructed Defendant Frankfort News Corp and/or Defendant Profit Marketing Inc. to send this fraudulent DMCA notice, or was informed that it would be sent and approved of it.

67.   On information and belief, one of the Doe Defendants was the registrant of the <frankfortherald.com> domain name at the time this fraudulent DMCA notice was sent, and either instructed Defendant Frankfort News Corp to send it or assisted Frankfort in sending it.

### THE WAGNER TRUCKING DMCA NOTICE

68.   On May 3, 2016, Defendant Juuso Haggman sent a DMCA notice to Google Inc. concerning content on Plaintiff's web site <pissedconsumer.com>.

The allegedly infringing content identified in the notice consisted of statements critical of Defendant Wagner Trucking LLC.   (*See* Wagner Trucking DMCA Notice, attached as **Exhibit 21**.)

69.    The DMCA notice claimed copyright in an "article" published on the web site <mashablecity.com>, with an alleged publication date of October 18, 2012. (*See* Wagner Trucking article, attached as **Exhibit 22**.)

70.    The DMCA notice claimed that this "article" was infringed by a consumer review on the <pissedconsumer.com> web site with a publication date of May 15, 2013, as well as all <pissedconsumer.com> pages containing reviews of Defendant Wagner Trucking.  (*See* Wagner Trucking review, attached as **Exhibit 23**.)[11]

71.    The Wagner Trucking DMCA notice was fraudulent.  The "article" was not published on the <mashablecity.com> web site on October 18, 2012.  In fact, according to Archive.org's Wayback Machine, as late as January 10, 2016, the <mashablecity.com> domain name resolved to the web site located at <mashablecity.org>, which only contained the message "Mashable City is an open community project, aimed at turning Providence, RI into the most mashup-friendly place on earth."  (*See* <mashablecity.com> Wayback Machine record, attached as **Exhibit 24**.)

---

[11]  After Plaintiff filed this suit, the previously-named Defendant Wagner Trucking Inc., based in Minnesota, contacted Plaintiff's counsel and informed them that Wagner Trucking Inc. was not involved in this scheme.  Because the consumer review discusses a transaction that took place in Mississippi, it appears that the reviewer slightly misidentified the entity it was reviewing.  Apparently Wagner Trucking LLC still felt that the review was worth removing with a fraudulent DMCA notice, however.

RANDAZZA | LEGAL GROUP

72.     On information and belief, the <mashablecity.com> domain name was not used to host any content that could be described as "news articles" until sometime after March 2016.

73.     Instead, shortly before sending the DMCA notice, Defendant Juuso Haggman copied the content of the <pissedconsumer.com> review, uploaded it to the <mashablecity.com> web site, and provided it with a false publication date to make it appear that it was published prior to the <pissedconsumer.com> review.

74.     This particular scam was somewhat more sophisticated than the others.    Instead of copying the <pissedconsumer.com> review verbatim, Defendant Juuso Haggman changed the name of the subject of the "article" from Wagner Trucking to Cam Transport Inc.[12] and altered a handful of details in the review.  The vast majority of the review was copied verbatim, however.

75.     Defendant Juuso Haggman is also the purported author of this "article," and either carried out these fraudulent activities or was a willing participant in them.

76.     Defendant Juuso Haggman knew that the <pissedconsumer.com> review identified in his DMCA notice was not infringing any work owned by him, and in fact that he had committed copyright infringement by copying the entirety of the review.

77.     Defendant Juuso Haggman transmitted the DMCA notice to Google Inc. in bad faith, knowing that no copyright infringement had occurred, for the purpose of tricking Google Inc. into de-listing the <pissedconsumer.com> review from Google search engine results.

---

[12] This way the fake "news article" could provide the basis of a fraudulent DMCA notice without even temporarily creating potential negative publicity for Wagner Trucking.

78.     Defendant Wagner Trucking LLC either instructed Defendant Juuso Haggman to send this fraudulent DMCA notice, or was informed that it would be sent and approved of it.

79.     On information and belief, Defendant Muhammad Ashraf was the registrant of the <mashablecity.com> domain name at the time this fraudulent DMCA notice was sent, and either instructed Defendant Juuso Haggman to send it or assisted Defendant Juuso Haggman in sending it.

### Notices from Related Entities

80.     On January 6, 2016, Defendant Heart Broadcasting Networks sent Google Inc. a DMCA notice requesting removal of a consumer review on the web site <ripoffreport.com>, based on the allegation that the review copied content on the web site <frankfortherald.com>.  (*See* Richard C. Wayne DMCA Notice, attached as **Exhibit 25**.)

81.     As with the DMCA notices directed at <pissedconsumer.com>, this notice was fraudulent in that the allegedly infringing content on <frankfortherald.com> was actually copied from the allegedly infringing review on <ripoffreport.com>.

82.     The <frankfortherald.com> web site contains the notice "Copyright © 2015 Heart Broadcasting Networks."

83.     On information and belief, Defendant Heart Broadcasting Networks is a confederate or alter ego of the Defendants that sent fraudulent DMCA notices targeted at content on the <pissedconsumer.com> web site.

84.     On March 15, 2016, Defendant Hearst Media LLC sent Google Inc. a DMCA notice requesting removal of content on the web site of a CBS affiliate located in Pittsburgh, claiming that the content of the CBS article was copied from an "article" on <frankfortherald.com>.  (*See* March 15, 2016 CBS DMCA Notice, attached as **Exhibit 26**.)

85.   On April 5, 2016, Defendant FrankFort Herald News Corp. sent Google Inc. a DMCA notice requesting removal of the exact same CBS article that was the target of the March 15 notice, claiming that the content of the CBS article was copied from the same "article" on <frankfortherald.com>. (*See* April 5, 2016 CBS DMCA Notice, attached as **Exhibit 27**.)

86.   As with the DMCA notices directed at the <pissedconsumer.com> web site, these notices were fraudulent in that the allegedly infringed content on <frankfortherald.com> was actually copied from the allegedly infringing article on the CBS affiliate's web site.

87.   As Defendants Hearst Media LLC and Defendant Frankfort Herald News Corp. sent identical DMCA notices directed at the same content allegedly copied from the <frankfortherald.com> web site, these Defendants are either confederates or alter egos of the entities that sent the fraudulent DMCA notices seeking to remove content on the <pissedconsumer.com> web site.

## 6.0.   FIRST CLAIM FOR RELIEF
### Violation of 17 U.S.C. § 512(f)
### (*Against all Defendants*)

88.   Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint.

89.   On information and belief, none of the reviews on <pissedconsumer.com> infringed any copyright owned or administered by any Defendant.

90.   On information and belief, Defendants knew or should have known that none of these reviews infringed on any copyright interest of any Defendant on the date each Defendant sent each fraudulent DMCA notice.

91.     Defendants sent the DMCA notices for the purpose of interfering with Plaintiff's business and/or for the purpose of suppressing criticism of the subjects of the <pissedconsumer.com> reviews' products or business practices.

92.     This is an improper use of the DMCA takedown scheme, and is specifically prohibited by law.  17 U.S.C. § 512(f).

93.     Defendants violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that the targeted <pissedconsumer.com> reviews infringed their copyrights.

94.     Defendants actually knew of the material falsity of their representations, as Defendants themselves committed copyright infringement in copying the <pissedconsumer.com> reviews and claiming them as their own.

95.     If Defendants did not affirmatively know of the material falsity of their representations, they were willfully blind as to their material falsity.

96.     As a direct and proximate result of Defendants' actions, Plaintiff has been injured in an amount to be determined at trial.

97.     Such injury includes, but is not limited to, the financial and personal expenses associated with responding to the DMCA notices, diminution in business resulting from content being de-indexed and/or removed by Google Inc., and harm to Plaintiff's free speech rights under the First Amendment.

98.     Plaintiff has been forced to retain the services of an attorney to pursue this action, and is entitled to recover its attorneys' fees and any and all costs associated with pursuing this matter, as permitted under 17 U.S.C. §§ 505 & 512(f).

99.     In the alternative, Plaintiff asks for attorneys' fees as damages due to the bad-faith actions of Defendants in these matters.

**7.0   SECOND CLAIM FOR RELIEF**
**Unlawful, Unfair, and Fraudulent Business Practices**
**Under California Business and Professions Code § 17200**
**(*Against all Defendants*)**

100.   Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint.

101.   Defendants' acts and conduct, as alleged above in this Complaint, constitute unlawful, unfair, and/or fraudulent business acts or practices as defined by California Business and Professions Code § 17200 *et seq.*

102.   Defendants' acts of unlawful, unfair, and fraudulent competition have caused harm to competition, to consumers, to the competitors of the business defendants, and to Plaintiff.   In particular, Defendants' acts have deprived the consuming public of valuable information about the goods and services offered by the Defendants who benefited from their scheme, harming the public in general and giving such individuals and entities an unfair competitive advantage.

103.   Defendants' acts of unlawful, unfair, and fraudulent competition have proximately caused Plaintiff to suffer injury in fact and loss of money and/or property (including as a result of expenses that Plaintiff has and will incur in its efforts to prevent and deter Defendants from engaging in unlawful conduct) in an amount to be proven at trial.

104.   Defendants' acts of unlawful, unfair, and fraudulent competition have also caused irreparable and incalculable injury to Plaintiff, its business, and its good will, and unless enjoined, could cause further irreparable and incalculable injury, whereby Plaintiff has no adequate remedy at law.

## 8.0   THIRD CLAIM FOR RELIEF
### Abuse of Process
### (*Against all Defendants*)

105.   Defendants used the DMCA process, including false sworn statements, to accomplish a purpose for which the DMCA notice and takedown procedure was not designed.

106.   Defendants used the false and perjurious DMCA notice to suppress criticism and to deprive customers of valuable information, and not to address any copyright concerns.

107.   Defendants deliberately perverted this particular legal process for its own benefit and in order to suppress Plaintiff's rights.

108.   Defendants' actions were willful and wanton and were committed with deliberate disregard for the law, including the Copyright Act and laws prohibiting perjury.

109.   As a direct and proximate result of Defendants' actions, Plaintiff has been injured in an amount to be determined at trial.

110.   Plaintiff has been forced to retain the services of an attorney to pursue this action, and is entitled to recover its attorneys' fees and any and all costs associated with pursuing this matter.  In the alternative, Plaintiff asks for attorneys' fees as damages due to the bad-faith actions of Defendant in these matters.

## 9.0   FOURTH CLAIM FOR RELIEF
### Civil Conspiracy
### (*Against all Defendants*)

111.   Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint.

112.   Defendants, and each of them, conspired, confederated, and colluded with the other defendants to engage in the above described scheme which constitutes violation of 17 U.S.C. § 512(f), fraudulent and unfair business

practices, and an abuse of legal process, to Defendants' economic benefit and Plaintiff's economic harm.

113. Defendants, and each of them, took affirmative steps to advance the conspiracy by taking part in formulating and sending the fraudulent DMCA notices that were calculated to have consumer reviews de-indexed.

114. On information and belief, Defendants jointly conceived and organized a scheme to send fraudulent DMCA notices for the purpose of tricking Google Inc. into de-indexing consumer reviews on <pissedconsumer.com>. Defendants engaged in these actions with full knowledge that those actions would cause harm to Plaintiff.

## 10.0  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment for Plaintiff and against Defendants as follows:

A. General damages based on Defendants' conduct as alleged herein in an amount to be determined at trial;

B. Punitive damages based on Defendants' willful, malicious, intentional, and deliberate acts in an amount to be determined at trial;

C. Prejudgment and post-judgment interest at the rate allowed by law;

D. Reasonable attorneys' fees and expenses of litigation;

E. Injunctive relief prohibiting Defendants from continuing to send fraudulent DMCA notices in violation of 17 U.S.C. § 512(f), engage in unlawful, unfair, and/or fraudulent business acts or practices, and abuse of process as described above in this Complaint; and

F. All other relief to which Plaintiff may be entitled.

## 11.0   <u>JURY DEMAND</u>

Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure

Dated: October 20, 2016.                    Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
4035 South El Capitan Way
Las Vegas, Nevada 89147

*Attorneys for Plaintiff,*
*Consumer Opinion LLC*

Case No. 3:16-cv-05100-JCS

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 20, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

Employee,
Randazza Legal Group, PLLC