UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CONSUMER OPINION LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>FRANKFORT NEWS CORP, et al.,<br><br>　　　　Defendants. | Case No.  16-cv-05100-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S RENEWED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>[RE:  ECF 20] |

For the reasons discussed below, Plaintiff Consumer Opinion LLC's renewed ex parte application for a temporary restraining order ("TRO") and order to show cause is GRANTED IN PART AND DENIED IN PART.

**I.    BACKGROUND**

Plaintiff owns and operates the consumer review website <pissedconsumer.com>. Plaintiff alleges that Defendants operate "reputation management" companies which may be hired to remove unflattering content about an individual or a business from websites such as <pissedconsumer.com> and to de-index such content from Internet search engines.  Plaintiff claims that Defendants provide these "reputation management" services by means of a fraudulent scheme whereby Defendants:  (1) create websites purporting to be legitimate news sites; (2) copy to those fake news sites whatever content their clients wish removed from the Internet; (3) back-date the copied content to give the appearance that the content first appeared on the fake news sites; and (4) demand that Google take down the "later" posted content as infringing the fake news sites' copyrights.

Plaintiff filed this action on September 2, 2016, asserting violations of the takedown procedures of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f); violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; civil conspiracy; and abuse of process. Plaintiff filed the operative first amended complaint ("FAC") on October 20, 2016, along with an ex parte application for a temporary restraining order ("TRO") and an ex parte motion to conduct early discovery. The motion for early discovery was granted, but the TRO application was denied without prejudice because it was unsupported by an affidavit or verified complaint as required for issuance of a TRO without notice to the adverse party. *See* Fed. R. Civ. P. 65(b)(1) (A TRO may be issued without notice to the adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition.").

On November 14, 2016, Plaintiff filed the present renewed application for a TRO and order to show cause, supported by the affidavit of Michael Podolsky, one of its Managing Members. The renewed TRO application seeks to enjoin certain conduct with respect to those Defendants who are the registrants, owners, and operators of: (1) the domain names <frankfortherald.com>, <palastinetimes.com>, and <palastinetoday.com>, which allegedly are used to operate the fake news sites described above ("fake news domain names"), and (2) the domain names <profitmarketing.com>, <guaranteedremovals.com>, <thereputationfirm.com>, <gainpr.com>, and <reputationsavers.com>, which allegedly are used to operate the reputation management companies described above ("reputation management domain names"). Plaintiff does not know which of the numerous individual and entity defendants are the registrants, owners, and operators of those domain names.

Plaintiff seeks three forms of injunctive relief.[1] First, Plaintiff asks the Court to issue a mandatory injunction requiring Defendants to transfer the registrations of the fake news domain names from Internet Domain Service BS Corporation, located in Nassau, the Bahamas, to registrars located in the United States with whom the fake news domain names were registered at

---

[1] Because Plaintiff has not submitted a proposed order with its motion, the Court has drawn upon statements in Plaintiff's brief to determine the scope of relief sought.

the time this lawsuit was filed. Second, Plaintiff asks the Court to issue an order restraining Defendants from further transfers of the fake news domain names and the reputation management domain names and/or deleting evidence of their unlawful activity from those websites. Third and finally, Plaintiff asks the Court to restrain VeriSign, Inc., the non-party registry of all ".com" domain names, from permitting any further transfers of the fake news domain names and the reputation management domain names.[2]

## II.    DISCUSSION

### A.    Legal Standard

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

A preliminary injunction may be either a prohibitory injunction or a mandatory injunction. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009).

---

[2] A domain name is created when it is "registered" with the appropriate "registry." *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 698 (9th Cir. 2010). Such registration may be effected only through companies that serve as "registrars." *Id.* at 698-99. Registrars accept registrations for new or expiring domain names, connect to the appropriate registry's servers to determine whether the name is available, and register available domain names on behalf of registrants. *Id.* at 699. "VeriSign is the registry for the domain names '.com' and '.net.'" *Id.*

1   The former "prohibits a party from taking action and preserves the status quo pending a
2   determination of the action on the merits," while the latter "orders a responsible party to take
3   action." *Id.* (internal quotation marks, citations, and alterations omitted). "In general, mandatory
4   injunctions are not granted unless extreme or very serious damage will result and are not issued in
5   doubtful cases or where the injury complained of is capable of compensation in damages." *Id.*
6   (internal quotation marks and citation omitted). Applying this standard, the Ninth Circuit has held
7   that a plaintiff seeking a mandatory injunction must establish that "the law and facts *clearly favor*
8   her position, not simply that she is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740
9   (9th Cir. 2015) (emphasis in original).

The Court may issue a TRO without notice to the adverse party only if (1) "specific facts in an affidavit or a verified complaint" show that immediate and irreparable injury will occur before the adverse party can be heard and (2) the movant's attorney certifies in writing what efforts were made to give notice and the reasons why notice should not be required. Fed. R. Civ. P. 65(b). In addition, this district's Civil Local Rules require that "[u]nless relieved by order of a Judge for good cause shown, on or before the day of an ex parte motion for a temporary restraining order, counsel applying for the temporary restraining order must deliver notice of such motion to opposing counsel or party." Civ. L.R. 65-1(b).

### B.     Notice

Plaintiff has submitted the declaration of Michael Podolsky, who identifies himself as "a Managing Member of Consumer Opinion LLC, the Plaintiff in this action." Podolsky Decl. ¶ 2, ECF 20-1. Podolsky states that he has performed his "own independent research" of the facts alleged in the FAC, the original TRO application, and the present renewed TRO application, and that those facts are true and correct to the best of his knowledge. *Id.* ¶¶ 3-4. The declaration is signed under penalty of perjury. While Podolsky's declaration is quite sparse, the Court concludes that his verification of the facts alleged in the FAC is sufficient to satisfy the first prong of Rule 65(b). The motion itself, which is signed by Plaintiff's attorney, explains that the TRO is sought without notice of Defendants to prevent Defendants from transferring the fake news domain names out of the Court's jurisdiction or destroying evidence on those websites. *See* Defs.' Mot. at

1  13-14, ECF 20. This explanation is sufficient to satisfy the second prong of Rule 65(b).

2  The Court thus concludes that Plaintiff has met the requirements of Federal Rule of Civil
Procedure 65(b) and Civil Local Rule 65-1(b). The Court therefore turns to the merits of the TRO
application.

### C.    Analysis

#### 1.    Likelihood of Success on the Merits

The Court begins its analysis by considering Plaintiff's showing on the first *Winter* factor, likelihood of success on the merits. Plaintiff's TRO application is premised on its claims under the DMCA and California's UCL. The DMCA imposes liability on entities who abuse the statute's takedown procedures, under which a copyright holder may direct a service provider to remove or disable access to online content that infringes the holder's copyrights. *See* 17 U.S.C. § 512(f); *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2016). As relevant here, the DMCA provides that any person who knowingly misrepresents that material or activity is infringing "shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing." 17 U.S.C. § 512(f). California's UCL prohibits an individual or entity from engaging in an "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

Based upon the scant evidence in the record, the Court concludes that while Plaintiff has made *some* showing that it may succeed on the merits of those claims, Plaintiff has not shown that it is *likely* to succeed. The only evidence submitted with the TRO application is the declaration of Michael Podolsky, discussed above, which verifies the facts alleged in the FAC. Podolsky Decl., ECF 20-1. The TRO application refers to documents appended to the FAC, which primarily consist of screen shots from the websites discussed above and DMCA takedown notices. However, those documents are not authenticated and therefore they are inadmissible. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("Authentication is a condition precedent to admissibility.") (internal quotation marks and citation omitted omitted). When

evaluating a TRO, the Court has discretion to give otherwise inadmissible evidence "some

evaluating a TRO, the Court has discretion to give otherwise inadmissible evidence "some weight." *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (trial court evaluating a motion for preliminary injunction may give otherwise inadmissible evidence "some weight" in order to avoid irreparable harm before trial); *Pac. Rollforming, LLC v. Trakloc Int'l, LLC*, No. CIV. 07CV1897-L (JMA), 2007 WL 3333122, at *2 (S.D. Cal. Nov. 7, 2007) (applying *Flynt* in context of TRO application). The Court in the exercise of its discretion has given the documents appended to the FAC "some weight," but it does not find the documents to be particularly probative because their origin and import is not adequately explained. Accordingly, while Plaintiff has submitted some evidence that it will succeed on its DMCA and UCL claims, that evidence is not substantial enough to show that success is likely.

Having concluded that Plaintiff has failed to meet its burden on the first *Winter* factor, the Court necessarily concludes that Plaintiff also has failed to meet the higher burden of establishing that "the law and facts *clearly favor*" its position as required to obtain a mandatory injunction. *See Garcia*, 786 F.3d at 740 (emphasis in original). Consequently, the Court DENIES Plaintiff's application for mandatory injunctive relief in the form of an order requiring Defendants to transfer the registrations of the fake news domain names from the current registrar located in the Bahamas to registrars located in the United States.

### 2. Serious Questions Going to the Merits

As to Plaintiff's application for prohibitory injunctive relief, however, Plaintiff may prevail even absent a showing of likelihood of success if Plaintiff can show that there are serious questions going to the merits, the balance of hardships tips sharply in its favor, and the other two *Winter* factors are satisfied. *See Friends of the Wild Swan*, 767 F.3d at 942.

Plaintiff makes two requests for prohibitory injunctive relief. First, Plaintiff asks the Court to restrain Defendants from transferring the fake news domain names and the reputation management domain names to other registrars and/or deleting material from those websites. This request presumes that the fake news domain names will be returned to registrars located in the United States. As discussed above, the Court declines to order Defendants to transfer the fake news domain names from the registrar located in the Bahamas to registrars located in the United

1    States.  Because Plaintiff has expressed no interest in requiring Defendants to maintain the fake

2    news domain names with a foreign registrar, and those websites have been taken down, the Court

3    treats Plaintiff's request for an injunction prohibiting further transfer of domain names and/or

4    deletion of material to apply only to the reputation management domain names.

5          Plaintiff also asks the Court to restrain VeriSign from permitting any further transfers of

6    the subject domain names during the pendency of the litigation.[3]  Those requests are addressed

7    separately below.

### a. Defendants

9          The Court concludes that although the verified allegations of the FAC and the

10   unauthenticated documents appended thereto are not substantial enough to establish Plaintiff's

11   likelihood of success on its claims, they are sufficient to raise serious questions going to the merits

12   of those claims.  The FAC and appended documents provide some evidence that Defendants are

13   utilizing fraudulent DMCA takedown notices to remove legitimate content from Plaintiff's

14   website.  If proved, that conduct would subject Defendants to liability under the DMCA and

15   California's UCL.

16         Turning to the balance of hardships, Defendants' conduct in transferring the registrations

17   of the fake news domain names to a registrar in the Bahamas, and shutting down those websites,

18   suggests that absent injunctive relief Defendants also may transfer the reputation management

19   domain names out of this Court's jurisdiction and/or remove incriminating content from those

20   websites.  Injunctive relief thus appears necessary to prevent injury to Plaintiff, and the Court does

21   not perceive how Defendants would be prejudiced by an injunction prohibiting them from

22   transferring the reputation management domain names from the current registrars.  And clearly,

23   "[s]imply prohibiting the destruction of evidence will not burden defendants." *Shutterfly, Inc. v.*

24   *ForeverArts, Inc.*, No. CR 12-3671 SI, 2012 WL 2911887, at *3 (N.D. Cal. July 13, 2012).  Under

---

[3] Plaintiff actually frames its request regarding VeriSign as an application for a mandatory injunction, asking the Court to "order Verisign to lock the domain names to prohibit any further transfers during the pendency of this litigation." Defs.' Mot. at 3, ECF 20. However, in the Court's view the application properly should be construed as seeking prohibitory injunctive relief because Plaintiff seeks to *prohibit* VeriSign from permitting transfers of the subject domain names.

1  those circumstances, and given the limited scope of the injunctive relief in question, the Court
2  concludes that the balance of hardships tips sharply in Plaintiff's favor with respect to the
3  requested prohibitory injunction directed to Defendants.
4        Both of the remaining *Winter* factors, the likelihood of irreparable harm and the public
5  interest, also weigh in Plaintiff's favor.  A defendant's secretion or dissipation of assets may
6  establish a likelihood of irreparable harm warranting injunctive relief.  *See In re Estate of*
7  *Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994) ("[A] district court
8  has authority to issue a preliminary injunction where the plaintiffs can establish that money
9  damages will be an inadequate remedy due to impending insolvency of the defendant or that
10 defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment.").
11 Moreover, it is in the public interest to prevent defendants in civil cases from avoiding liability or
12 payment of money judgments by secreting assets or destroying evidence.
13       Accordingly, the Court GRANTS Plaintiff's application for a TRO enjoining Defendants
14 from transferring the reputation management domain names to other registrars and/or deleting
15 material from those websites.

           **b.**    **VeriSign**

17       In addition to seeking a TRO against Defendants, Plaintiff asks the Court to enjoin
18 VeriSign from permitting transfer of the subject domain names to other registrars.  The Court
19 lacks authority to issue a TRO against VeriSign.  Under Federal Rule of Civil Procedure 65, a
20 TRO "binds only the following who receive actual notice of it by personal service or otherwise:
21 (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other
22 persons who are in active concert or participation with anyone described in" (A) or (B) above.
23 Fed. R. Civ. P. 65(d)(2).  VeriSign is not a party to this action, and Plaintiff has not argued, let
24 alone established, that VeriSign is in active concert with Defendants.
25       Plaintiff cites *Office Depot Inc. v. Zuccarini* for the proposition that this Court may enjoin
26 VeriSign.  *Zuccarini* addressed the efforts of an assignee of rights against a judgment debtor to
27 levy upon the judgment debtor's domain name holdings.  *Office Depot Inc. v. Zuccarini*, 596 F.3d
28 696, 698 (9th Cir. 2010).  The Ninth Circuit held that the suit properly was brought in the district

in which VeriSign, the registry of the domain names, was located. *Id.* at 703. The case did not address the district court's authority – or lack thereof – to issue a TRO against a non-party.

Accordingly, the Court DENIES Plaintiff's application for a TRO directed toward VeriSign.

### 3. Security

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted) (italics in original). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.*

As discussed above, it does not appear that Defendants will be prejudiced by a TRO prohibiting them from transferring the fake news domain names to other registrars or removing material from those websites. Under these circumstances, the Court finds it appropriate to issue that limited TRO without requiring Plaintiff to provide security.

## III. ORDER

Plaintiff's TRO application is GRANTED IN PART AND DENIED IN PART as set forth below.

(1) The TRO application is GRANTED as follows: Defendants, their officers, agents, servants, employees, and attorneys and all those in active concert or participation with them are ENJOINED from transferring the domain names referred to herein as the reputation management domain names (<profitmarketing.com>, <guaranteedremovals.com>, <thereputationfirm.com>, <gainpr.com>, and <reputationsavers.com>) from their current registrars to other registrars, and are ENJOINED from deleting material from those websites.

9

(2) The TRO application is DENIED with respect to Plaintiff's request for an order requiring Defendants to transfer the domain names referred to herein as the fake news domain names (<frankfortherald.com>, <palastinetimes.com>, and <palastinetoday.com>) to registrars located in the United States and is DENIED with respect to Plaintiff's request for an order directed against VeriSign, Inc.

(3) The TRO is granted without security;

(4) The TRO shall remain in effect for fourteen days, until December 1, 2016, unless otherwise ordered by the Court;

(5) Defendants are hereby ORDERED TO SHOW CAUSE, in writing and on or before November 29, 2016, why a preliminary injunction should not issue; and

(6) A Show Cause Hearing regarding Plaintiff's motion for preliminary injunction is SET FOR HEARING on December 1, 2016, at 9:00 a.m.

Dated: November 17, 2016

_____
BETH LABSON FREEMAN
United States District Judge